# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 19-0633V
UNPUBLISHED

| | |
|---|---|
| T. E.,<br><br>             Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>             Respondent. | Chief Special Master Corcoran<br><br>Filed: May 7, 2021<br><br>Special Processing Unit (SPU);<br>Decision Awarding Damages; Pain<br>and Suffering; Unreimbursable<br>Expenses; Influenza (Flu) Vaccine;<br>Shoulder Injury Related to Vaccine<br>Administration (SIRVA) |

*Carol L. Gallagher,* Carol L. Gallagher, Esquire, LLC, Somers Point, NJ, for Petitioner.

*James Vincent Lopez,* U.S. Department of Justice, Washington, DC, for Respondent.

## DECISION AWARDING DAMAGES[1]

On April 30, 2019, T. E. filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. § 300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered left shoulder injuries related to vaccine administration ("SIRVA") as a result of an influenza ("flu") vaccine administered on September 28, 2018. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

For the reasons described below, I find that Petitioner is entitled to an award of damages in the amount **$70,203.12**, **representing compensation in the amount of**

---

[1] Because this unpublished decision contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

**$70,000.00 for actual pain and suffering, and $203.12 for past unreimbursable expenses.**

I.     **Relevant Procedural History**

Petitioner filed Exhibits 1-12 containing medical records and an affidavit (ECF No. 6-7). On May 28, 2020, Petitioner filed Ex. 13 (ECF No. 25). On August 3, 2020, Respondent filed his Rule 4(c) Report conceding that Petitioner was entitled to compensation (ECF No. 29). On August 5, 2020, a ruling on entitlement was issued, and the parties began damages discussions (ECF Nos. 30-31).

On August 27, 2020, Petitioner filed a status report (ECF No. 34). Petitioner reported that the parties had reached an impasse on damages and requested guidance on how to proceed. On October 20, 2020, a telephonic status conference was held to discuss how to proceed regarding damages. The parties reported that they were still trying to come to an agreement on damages, but requested that I set a schedule for damages briefs. Scheduling Order, issued Oct. 20, 2020 (ECF No. 39).

On January 6, 2021, Petitioner filed her damages brief ("Br.") (ECF No. 41). Respondent filed his brief ("Opp.") on March 1, 2021 (ECF No. 43). Petitioner filed additional medical records as Ex. 14 on March 2, 2021 (ECF No. 44). On March 4, 2021, Petitioner filed a reply ("Reply") to Respondent's damages brief (ECF No. 46).

On March 18, 2021, Petitioner filed a joint status report (ECF No. 48), confirming that Petitioner sought only past pain and suffering and past unreimbursable damages, and reported that the parties were amenable to an expedited hearing (to be held on April 30, 2021) to resolve damages. The case was set for a Motions Day slot for the end of April (ECF No. 49).

On April 8, 2021, a pre-hearing telephonic status conference was held. Order, issued Apr. 8, 2021 (ECF No. 50). The parties confirmed that they were in agreement that Petitioner was entitled to $203.12[3] in unreimbursed expenses, but disagreed on damages for pain and suffering and a mattress. *Id.* Petitioner's counsel stated that she had requested but not yet received a letter of medical necessity for the mattress. *Id.* Counsel were advised that they were not limited to discussing cases cited in the damages briefs. *Id.* However, they were cautioned that their discussion of other cases should be limited to information in public decisions. *Id.*

---

[3] Petitioner requested $213.00 for "incurred co-pays" in her brief. Br. at 12. However, during the April 8, 2021 conference, counsel for both parties agreed that the correct amount was $203.12 (ECF No. 50).

On April 30, 2021, an expedited hearing was held to resolve damages. This written decision memorializes the decision that I issued orally at the conclusion of the hearing.[4]

## II.     Legal Standard

Compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). Additionally, a petitioner may recover "actual unreimbursable expenses incurred before the date of judgment award such expenses which (i) resulted from the vaccine-related injury for which petitioner seeks compensation, (ii) were incurred by or on behalf of the person who suffered such injury, and (iii) were for diagnosis, medical or other remedial care, rehabilitation . . . determined to be reasonably necessary." Section 15(a)(1)(B). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Hum. Servs.*, No. 93-0092V, 1996 WL 147722, at \*22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996).

There is no mathematic formula for assigning a monetary value to a person's pain and suffering and emotional distress. *I.D. v. Sec'y of Health & Hum. Servs.*, No. 04-1593V, 2013 WL 2448125, at \*9 (Fed. Cl. Spec. Mstr. May 14, 2013) ("[a]wards for emotional distress are inherently subjective and cannot be determined by using a mathematical formula"); *Stansfield v. Sec'y of Health & Hum. Servs.*, No. 93-0172V, 1996 WL 300594, at \*3 (Fed. Cl. Spec. Mstr. May 22, 1996) ("the assessment of pain and suffering is inherently a subjective evaluation"). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering. *I.D.*, 2013 WL 2448125, at \*9 (quoting *McAllister v. Sec'y of Health & Hum. Servs.,* No 91-1037V, 1993 WL 777030, at \*3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

I may also consider prior pain and suffering awards to aid my resolution of the appropriate amount of compensation for pain and suffering in this case. *See, e.g.*, *Doe 34 v. Sec'y of Health & Hum. Servs.*, 87 Fed. Cl. 758, 768 (2009) (finding that "there is nothing improper in the chief special master's decision to refer to damages for pain and suffering awarded in other cases as an aid in determining the proper amount of damages in this case."). And, of course, I may rely on my own experience (along with my

---

[4] At the end of the hearing, I issued an oral ruling from the bench on damages in this case. That ruling is set forth fully in the transcript from the hearing, which is yet to be filed with the case's docket. The transcript from the hearing is, however, fully incorporated into this Decision.

predecessor Chief Special Masters) adjudicating similar claims.[5] *Hodges v. Sec'y of Health & Hum. Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993) (noting that Congress contemplated the special masters would use their accumulated expertise in the field of vaccine injuries to judge the merits of individual claims).

Although pain and suffering in the past was often determined based on a continuum, as Respondent argues, that practice was cast into doubt by the Court several years ago. In *Graves*, Judge Merrow rejected a special master's approach of awarding compensation for pain and suffering based on a spectrum from $0.00 to the statutory $250,000.00 cap. Judge Merrow maintained that do so resulted in "the forcing of all suffering awards into a global comparative scale in which the individual petitioner's suffering is compared to the most extreme cases and reduced accordingly." *Graves*, 109 Fed. Cl. at 590. Instead, Judge Merrow assessed pain and suffering by looking to the record evidence, prior pain and suffering awards within the Vaccine Program, and a survey of similar injury claims outside of the Vaccine Program. *Id.* at 595. Under this alternative approach, the statutory cap merely cuts off *higher* pain and suffering awards – it does not shrink the magnitude of *all* possible awards as falling within a spectrum that ends at the cap.

### III. Appropriate Compensation in this SIRVA Case

#### A. Pain and Suffering

There is no dispute about Petitioner's awareness of her injury, leaving only severity and duration to be considered. In determining an appropriate award, I have reviewed the complete record in this case, as well as prior awards. My determination is based on the specific circumstances of this case.

Petitioner requests a pain and suffering award of $125,000.00. Br. at 12. In support of this request, Petitioner cites a number of prior SIRVA decisions, including three in which petitioners received pain and suffering awards exceeding $100,000.00, *Cates*,[6] *Collado*,[7]

---

[5] From July 2014 until September 2015, the SPU was overseen by former Chief Special Master Vowell. For the next four years, until September 30, 2019, all SPU cases, including the majority of SIRVA claims, were assigned to former Chief Special Master Dorsey, now Special Master Dorsey. In early October 2019, the majority of SPU cases were reassigned to me as the current Chief Special Master.

[6] *Cates v. Sec'y of Health & Hum. Servs.*, No. 18-0275V, 2020 WL 3751072 (Fed. Cl. Spec. Mstr. June 5, 2020) (awarding $108,000.00 for actual pain and suffering).

[7] *Collado v. Sec'y Health & Hum. Servs.*, No. 17-0225V, 2018 WL 3433352 (Fed. Cl. Spec. Mstr. June 6, 2018) (awarding $120,000.00 for actual pain and suffering and $772.53 for actual unreimbursable expenses).

4

and *Cabansag*,[8] as well as others with lower awards, *Bartholomew*,[9] *Bordelon*,[10] *Dagen*,[11] *Dhanoa*,[12] and *Dirksen*.[13] Br. at 5-11. Petitioner's counsel conceded at argument that the cases cited in her brief with six-figure awards involved petitioners who underwent surgical repair of their injuries, while she did not.

Respondent argues that the pain and suffering award should be no more than $55,000.00. Opp. at 1. Petitioner sustained a relatively mild injury that required less than six months of treatment. *Id*. at 9. Respondent also argues that Petitioner's injury was conservatively managed with a cortisone injection, seven physical therapy ("PT") sessions, and a topical anti-inflammatory. *Id*. Petitioner's case is not comparable to the cases she cites that involved surgery. *Id*. Although surgery may have been discussed as a treatment option, it never occurred, and therefore awards in which it was taken into account are inapposite. *Id*. at 10. Respondent asserts that Petitioner's case is more comparable to *Rayborn*,[14] *Knauss*,[15] and *Dagen* – all non-surgery cases.

A number of facts from this case suggest the pain and suffering award should not be as high as some of Petitioner's proposed comparable cases. Petitioner's last treatment for her shoulder injury was on March 25, 2019, just under six months after vaccine

---

[8] *Cabansag v. Sec'y of Health & Hum. Servs.*, No. 16-475V, 2016 WL 6496277 (Fed. Cl. Spec. Mstr. Aug. 23, 2016). The public decision in this case (which was a settled matter after Respondent's proffer) contains little information about the petitioner's injury or treatment, and thus details about those matters are not included in this Decision.

[9] *Bartholomew v. Sec'y of Health & Hum. Servs.*, No. 18-1570V, 2020 WL 3639805 (Fed. Cl. Spec. Mstr. June 5, 2020) (awarding $67,000.00 for actual pain and suffering).

[10] *Bordelon v. Sec'y of Health & Hum. Servs.*, No. 17-1892V, 2019 WL 2385896 (Fed. Cl. Spec. Mstr. Apr. 24, 2019) (awarding $75,000.00 for actual pain and suffering).

[11] *Dagen v. Sec'y of Health & Hum. Servs.*, No. 18-0442V, 2019 WL 7187335 (Fed. Cl. Spec. Mstr. Nov. 6, 2019) (awarding $65,000.00 for actual pain and suffering and $2,080.14 for actual unreimbursable expenses).

[12] *Dhanoa v. Sec'y Health & Hum. Servs.*, No. 15-1011V, 2018 WL 1221922 (Fed. Cl. Spec. Mstr. Feb. 1, 2018) (awarding $85,000.00 for actual pain and suffering, $9,900.99 for projected pain and suffering, and $862.15 for actual unreimbursable expenses).

[13] *Dirksen v. Sec'y Health & Hum. Servs.*, No. 16-1461V, 2018 WL 6293201 (Fed. Cl. Spec. Mstr. Oct. 18, 2018) (awarding $85,000.00 for actual pain and suffering and $1,784.56 for actual unreimbursable expenses).

[14] *Rayborn v. Sec'y Health & Hum. Servs.*, No. 18-0226V, 2020 WL 5522948 (Fed. Cl. Spec. Mstr. Aug. 14, 2020) (awarding $55,000.00 for actual pain and suffering and $619.60 for actual unreimbursable expenses).

[15] *Knauss v. Sec'y Health & Hum. Servs.*, No. 16-1372V, 2018 WL 3432906 (Fed. Cl. Spec. Mstr. May 23, 2018) (awarding $60,000.00 for actual pain and suffering and $170.00 for actual unreimbursable expenses).

administration.[16] Ex. 4 at 40. Her affidavit, which asserts that she continued "to experience excruciating pain" in her left shoulder and arm, is dated April 23, 2019, less than seven months after vaccination. Ex. 2 at ¶ 27. The only record evidence documenting any shoulder issues beyond this point is from a September 20, 2019 gynecologist appointment where Petitioner reported "shoulder pain/decreased range of motion after flu shot last year. May need to have surgery." Ex. 13 at 123. It does not appear that an examination or treatment was sought or performed at this appointment. And though Petitioner asserts in her brief that she continued to experience significant pain fifteen months after vaccine administration (Br. at 5), there is no evidence in the record to support this assertion.

From the above, I conclude there is objective, medical record evidence supporting a finding that Petitioner's symptoms continued for at least six months, and I credit her affidavit a month later indicating that the pain continued for some time after. However, the fall 2019 gynecologist record does not provide objective evidence of continuing shoulder symptoms, nor does the record contain other objective evidence documenting symptoms beyond seven months. Thus, I find that the preponderance of the evidence would support a finding that Petitioner's symptoms continued for approximately seven months.

As to the intrusiveness of treatment and other interventions, the record establishes that Petitioner was treated with one cortisone injection, from which she did not obtain relief. She attended two short courses of physical therapy for a total of seven sessions. Ex. 7.[17] And she experienced mild to moderate restrictions in her range of motion and pain with motion. Ex. 3 at 19; Ex. 7 at 5, 9, 11, 15, 20. This, plus the absence of surgery, all further supports a slightly below-median award.

In response, Petitioner offers an explanation for the absence of surgery. She maintains that she did not undergo surgery due to a risk of developing adhesive capsulitis, her history of severe anxiety, and her fear of contracting COVID. Br. at 3-4, 7, 9-10. However, the record does not permit me to conclude that these factors were the predominant reason she did not undergo surgery.

First, while the record documents that surgery was *discussed*, it does not appear to have been Petitioner's physician's recommended treatment. At her March 25, 2019 appointment with Dr. Kuntz, for example, the record states that Dr. Kuntz discussed with her "recent literature that suggest equivalent outcomes with surgical and nonoperative treatment, but an increased risk of developing adhesive capsulitis following surgical

---

[16] The first treatment for her shoulder injury was 18 days after vaccination. Ex. 5 at 10-13.

[17] Petitioner attended five PT sessions between November 8-19, 2018, Ex. 7 at 5-21, and two PT sessions between February 18-25, 2019, Ex. 7 at 25-31.

treatment." Ex. 4 at 45. This record goes on to indicate that she:

> has tried everything, but as it turns out *she has not been doing her exercises at home*. We talked about pre-simple phase I range of motion exercises and phase I strengthening exercises. She is agreeable to trying these at home on her own. She will try to cut back on some of her painful activities as well. Ultimately though, if she has persistent symptoms and feels that the potential benefits of surgery outweigh the risks, then she will return to further discuss surgical treatment.

Ex. 4 at 45-46 (emphasis added). This suggests that Petitioner's physician recommended that she first try home exercises - and if her symptoms persisted, she could return to discuss the risks and benefits of surgery. There are no further records documenting evaluation or treatment of her shoulder, and no evidence that surgery was recommended more firmly. Thus, the preponderance of the evidence reflects that surgery was discussed only as a possible option to consider at a later time if home exercises were unsuccessful, but not her physician's recommended treatment.

Second, while Petitioner documented a pre-existing anxiety and panic disorder, I cannot conclude from the record that this condition explains her failure to undergo surgery. The record documents that Petitioner attended 15-minute medication management appointments at four to five month intervals. Ex. 11. It appears that only the February 8, 2019 record includes anything about her shoulder, and indicates simply that she hoped to *avoid* surgery. Ex. 11 at 21. Thus, the preponderance of the evidence would not support a finding that Petitioner's shoulder injury was severe enough to require surgery, or that her pre-existing anxiety condition precluded surgery.

The pain levels reported in Petitioner's medical records varied greatly. Initially, she reported pain levels ranging from 2-5. Ex. 5 at 10; 3 at 31, 39, 40. From the period of mid-October to late November 2018, a period of approximately six weeks, Petitioner reported pain levels in the moderate to high range for the most part. At five consultations during this time, on October 19 and November 14, 16, 19, and 30, she reported pain at a level of 9 or 10 on a scale of 0-10. Ex. 6 at 4, 10, 24; Ex. 7 at 5, 11, 13, During this same period of time, on three occasions she reported mild or no pain at all, or a pain level between 2-5 on a scale of 0-10. Ex. 7 at 9 (November 15, 2018 physical therapy ("PT") record indicating she felt "ok" prior to treatment and reported pain at a level of 5/10 after treatment); 7 at 17 (November 8, 2018 PT record noting no pain prior to treatment and mild pain after treatment); 7 at 15 (November 12, 2018 PT record noting no pain prior to treatment and after treatment she was "numb from ice"). In February and March 2019, Petitioner reported pain levels of 0, 10 or simply "a lot." Ex. 7 at 28, 23; Ex. 4 at 40. The preponderance of the evidence thus supports a finding that Petitioner's pain levels were

7

not consistently high enough to justify the pain and suffering damages component requested by Petitioner.

Petitioner underwent two MRIs and an ultrasound. Ex. 12. The first MRI, on October 30, 2018, was of poor quality and showed tendinosis and minimal subacromial subdeltoid fluid, but no rotator cuff tear. *Id.* at 1-2. Petitioner's January 11, 2019 ultrasound noted a high-grade partial-thickness tear of the supraspinatus tendon at its insertion. Ex. 12 at 3. Dr. Kuntz ordered a repeat MRI to confirm whether there was a tear. Ex. 4 at 28. The second MRI report indicated findings of tendinopathy with partial tears. Ex. 12 at 6. However, Dr. Kuntz reviewed the MRI and stated, "I actually do not see any signs of a high-grade partial thickness tear." Ex. 4 at 37.

Overall, this case presents evidence of a mild to moderate SIRVA. After six months, Petitioner did not seek further evaluation or treatment. I acknowledge that this does not necessarily mean that she was completely asymptomatic by this time, but it does suggest that she was able to manage any remaining symptoms on her own without formal treatment.

I find that two of the cases cited by Petitioner, *Bordelon* and *Dagen*, are the most similar to this case, and set the appropriate range in which Petitioner's award should fall. In both *Bordelon* and *Dagen*, the petitioners did not require surgery, had one cortisone injection, and underwent physical therapy. Both injuries also continued for a similar duration -- eight months in *Bordelon* and seven months in *Dagen*, with similar ranges in pain levels. And while the petitioners in *Bordelon* and *Dagen* obtained better results from physical therapy, they also attended more sessions: sixteen each in *Bordelon* and *Dagen* versus seven in this case.

In *Dagen*, the petitioner was awarded $65,000.00 for pain and suffering, and in *Bordelon* the award was $75,000.00. I find that a slightly higher award than *Dagen* is warranted in this case, because the evidence suggests that Petitioner in this case had less relief from her treatment. *Dagen,* 2019 WL 7187335*,* at *4. However, a slightly lower award than *Bordelon* is also appropriate, as the Petitioner in that case was assessed with potential early adhesive capsulitis and axillary nerve injury, and underwent formal treatment for two months longer than Petitioner in this case. *Bordelon,* 2019 WL 2385896*,* at *7-8. I therefore award Petitioner $**70,000.00** for pain and suffering.

### B. Unreimbursable Expenses

The parties agree that Petitioner is entitled to $203.12 for past unreimbursable expenses, and I award this amount.

8

In addition, Petitioner requests $1,971.48 for a sleep number modular base mattress set. Br. at 12. Petitioner's brief asserts that this "better enables her to release pressure on her shoulder while sleeping." *Id.*

Respondent argues that this expense should not be reimbursed. Opp. at 15. Respondent asserts:

> Petitioner references no medical opinion recommending she purchase a sleep number bed. Petitioner does not cite reports made to her medical provider regarding an inability to sleep, which coincided with the purchasing of this mattress. Absent evidence showing that the purchasing of this bed is 'reasonably necessary,' as required by Section 15(a)(1)(A) of the Vaccine Act, compensation for this bed is not warranted.

Opp. at 15.

I find that an expense of this type could, conceivably, be eligible for reimbursement under Section 15(a)(1)(A). Certainly it is in the ballpark of reasonability. However, in this case, Petitioner has not provided objective corroboration as to the need for the bed, such as a doctor's recommendation, or the amount of the expense. Due to the absence of substantiating evidence, this expense is denied.

## IV. Conclusion

For all of the reasons discussed above and based on consideration of the record as a whole, **I find that $70,000.00 represents a fair and appropriate amount of compensation for Petitioner's actual pain and suffering.[18] I also find that Petitioner is entitled to $203.12 in actual unreimbursable expenses.**

Based on the record as a whole and arguments of the parties, **I award Petitioner a lump sum payment of $70,203.12 in the form of a check payable to Petitioner.** This amount represents compensation for all damages that would be available under Section 15(a).

---

[18] Since this amount is being awarded for actual, rather than projected, pain and suffering, no reduction to net present value is required. *See* § 15(f)(4)(A); *Childers v. Sec'y of Health & Hum. Servs.*, No. 96-0194V, 1999 WL 159844, at *1 (Fed. Cl. Spec. Mstr. Mar. 5, 1999) (citing *Youngblood v. Sec'y of Health & Hum. Servs.*, 32 F.3d 552 (Fed. Cir. 1994)).

The clerk of the court is directed to enter judgment in accordance with this decision.[19]

**IT IS SO ORDERED.**

           **s/Brian H. Corcoran**
           Brian H. Corcoran
           Chief Special Master

---

[19] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.